## VON LATHAM a. ROWAN.

*Supreme Court, Second District; General Term, December,* 1862.

MALICIOUS PROSECUTION.—FALSE IMPRISONMENT.—ELECTION OF CAUSE OF ACTION.—PRESUMPTION OF MALICE.—UNLAWFUL INTRUSION ON REAL PROPERTY.—CITY COURT OF BROOKLYN. —NEW TRIAL.

On the trial of an action in which, from the form of the complaint, it seemed uncertain whether the damages were claimed for a malicious prosecution or a false

imprisonment, the judge, at the close of the plaintiff's case, ruled, without objection from either side, that the proof offered showed that the plaintiff sought to recover for a false imprisonment.

*Held,* that the case must be treated on appeal as an action for false imprisonment.

After such an election by the court, acquiesced in by the plaintiff, admissions in the answer pertinent only in an action for malicious prosecution should be conformed to and construed by the evidence, and not made the ground of liability more extended than the proofs warrant.

A person who has, without bad faith, upon oath or otherwise, merely stated his case to a magistrate having jurisdiction of the offence supposed to have been committed, and of the person accused, is not liable to an action for false imprisonment upon the consequent arrest of the accused, although such arrest is not warranted by the law or the facts in the case.

Power of the Supreme Court on appeal from the City Court of Brooklyn to grant a new trial.

Appeal from a judgment of the City Court of Brooklyn.

This action was brought by Gerard Von Latham against Thomas Rowan and William P. Libby to recover $5,000. The cause of action, as averred in the complaint, was as follows: That heretofore, and on or about the 5th day of February, 1862, the above-named defendants, at the city of Brooklyn, wrongfully and maliciously contriving and conspiring together to injure the plaintiff, caused and procured a warrant to be issued against and for the apprehension of the plaintiff, by William M. Boerum, Esq., a justice of the peace of said city; and for the purpose of procuring said warrant, and to subject the plaintiff to arrest and imprisonment thereunder, in pursuance of said contrivance and conspiracy, one of said defendants falsely made oath before said justice, in said city, that in the month of November, 1861, at the city of Brooklyn, in the county of Kings, the plaintiff did unlawfully intrude, enter upon, and take possession of the house situated and known as No. 12 Huntington-street, in said city, without license or authority of William P. Libby, the owner thereof; and that said plaintiff had and still continued to occupy said house, without the authority of the owner thereof as aforesaid, in violation of the statute in such cases made and provided. Whereupon the said justice issued his said warrant in due form of law against the plaintiff, to an officer of the metropolitan police, who thereupon, in pursuance of the requirements thereof, arrested and imprisoned the plaintiff, and forced and compelled the plaintiff to go

in custody as such prisoner, through a great many public streets and places in said city, to a certain police station-house, building, or prison, and there kept, detained, and imprisoned the plaintiff for a long space of time, and took and compelled said plaintiff to go before said justice, where the plaintiff was kept, detained, and imprisoned in a public court-room for a long space of time; that the plaintiff was forced and compelled on subsequent and other days and times to appear before said justice for examination on said charge, which was finally dismissed by said justice, the defendants failing to appear and prosecute and sustain said charge, and the plaintiff was discharged therefrom.

The plaintiff further says, that said charge was false and untrue, that there was no reasonable or probable cause therefor, or for the arrest, imprisonment, and arraignment of the plaintiff, and the defendants well knew the same. That by reason of said charge, arrest, and imprisonment, and the publication by the defendants thereof in a public newspaper, the plaintiff was greatly harrassed and annoyed, and was damaged and injured in his good name and reputation, and in his rights and feelings, and was subject and held up to public scorn, infamy, and disgrace, to his damage, &c.

The substance of the answer sufficiently appears from the opinion. At the trial, after plaintiff's opening, the defendants moved the court to compel the plaintiff to elect whether he would proceed for false imprisonment or malicious prosecution. The motion was denied, and an exception taken. At the close of plaintiff's case a similar motion was made and denied by the court, on the ground that by the proof the plaintiff rested his case on the ground of false imprisonment. An exception was again taken. Defendants then moved for a nonsuit upon the following grounds, namely: That the justice who issued the warrant had jurisdiction of the subject-matter of the complaint; that the facts set forth in the affidavit were legal evidence, and tended to make out a proper case, and the justice having decided that they made out a criminal offence, and issued his warrant accordingly, such decision was conclusive until revoked, and afforded a protection to the defendants. That the defendants having stated their case to the magistrate, and thereby merely put the court in motion, were not liable in the absence of evidence that such statement was untrue, or made in bad

faith, or maliciously. The motion was denied, and the defendants excepted. The defendants then rested. The court charged the jury that the plaintiff had made out a cause of action for false imprisonment, and the only question for them to determine was the amount of damages. That the plaintiff was entitled to full compensation for the injuries actually sustained by him. That the jury might look into the evidence to ascertain whether the defendants were actuated by malicious motives towards the plaintiff; and if they believed the defendants were so actuated, they might give damages beyond the amount of injury actually sustained by the plaintiff, by way of punishing the defendants; and that the amount of exemplary damages was within the discretion of the jury, to be reasonably and carefully exercised.

The defendants excepted to that portion of the charge which submitted to the jury the question whether the defendants were actuated by malicious motives.

The jury found a verdict for the plaintiff for $1,000. The defendants' motion for a new trial was denied. After the entry of judgment, defendants appealed from the judgment and the order refusing a new trial.

*Jasper W. Gilbert,* for the appellant.—I. The verdict is so manifestly and grossly excessive, as to evince partiality or corruption on the part of the jury. The City Court, therefore, erred in denying the motion for a new trial, and this court has the power to correct the error. (*Laws of* 1849, 171, ch. 125, § 4.) The exercise of the power to grant new trials is not discretionary merely, but is a judicial power, and suitors have a right to insist on the exercise of it, whenever a proper case is presented. When a statute authorizes the doing of a thing for the sake of justice, the word "may" is the same as the word "shall." (Macdougall *a.* Patterson, 11 *Com. B.,* 772, 773; Mayor, &c., of N. Y. *a.* Furze, 3 *Hill,* 612.) That the verdict was palpably and outrageously excessive, admits of no question. There was no evidence to warrant it, and "to suffer it to stand, could have no other tendency but to weaken the security of property, and lessen the respect which belongs to the administration of justice." (Fay *a.* Grimsteed, 10 *Barb.,* 321, 331.)

II. The appellate jurisdiction of the Supreme Court is com-

prehensive enough to correct such an error as this. It is submitted that this question is *res judicata* in this district at least; and it seems clear, upon looking into the City Court Act, and the Code. (*Laws of* 1850, ch. 102; *Code*, § 330.)

III. The court below erred in submitting to the jury the question, whether the defendants were actuated by malicious motives. No evidence tending to prove malice was offered.

IV. But, upon principle, and upon authority, the action cannot be sustained. 1. It is an action of trespass for false imprisonment, and not an action on the case for a malicious prosecution. It was so treated by the court, with the acquiescence of the plaintiff, and no proof of want of probable cause was offered. The distinction between these actions, and the rules governing the liability of defendants in them, is familiar. (See Pratt *a.* Gardner, 2 *Cush.*, 68; *Hill on Torts*, 479; Chadsey *a.* Brown, 3 *Stevens N. P.*, 2036.) 2. When a person maliciously, and without probable cause, institutes a proceeding which causes the arrest of another, he is liable in an action on the case. Where a person procures from a justice of the peace acting ministerially, or from a clerk of the court, illegal process under which another's person is arrested or property seized, his act, in thus extending the power of the court to a case in which it cannot lawfully be extended, makes him liable as a trespasser, independently of any question of malice or probable cause. (See Percival *a.* Jones, 2 *Johns. Cas.*, 49; Curry *a.* Pringle, 11 *Johns.*, 444; Rogers *a.* Mulliner, 6 *Wend.*, 597.) But, in order to charge the plaintiff in the suit, it should appear that it was really his act. (Percival *a.* Jones, *supra;* Gold *ads.* Bissell, 1 *Wend.*, 210; Taylor *a.* Trask, 7 *Cow.*, 249.) And when a complainant in a criminal prosecution, in addition to preferring his complaint, positively commands the arrest of the person prosecuted, he may perhaps be made liable as a trespasser. (Hopkins *a.* Crowe, 7 *C. & P.*, 373; Sowell *a.* Champion, 6 *A. & E.*, 407.) But, if a man complain to a magistrate on a subject-matter over which the magistrate has a general jurisdiction, and the magistrate, thereupon, grant a warrant, under which the party complained against is apprehended, the complainant is not liable as a trespasser, although the particular case be one in which the magistrate had no authority to act. (1 *Arch. N. P.*, 505; West *a.* Smallwood, 1

*Mees. & W.*, 418.) For the act amounted to no more than calling upon the magistrate to exercise his jurisdiction. (Mills *a.* Callett, 6 *Bing.*, 85 ; approved in Stewart *a.* Hawley, 21 *Wend.*, 555 ; Brown *a.* Chapman, 6 *Man. Gr. & S.*, 366 ; S. P., Lock *a.* Ashton, 12 *Ad. & El.*, *N. S.*, 871 ; Shaw *a.* Reed, 16 *Mass.*, 450 ; Brown *a.* Crowl, 5 *Wend.*, 298 ; Peckham *a.* Tomlinson, 6 *Barb.*, 253 ; Easton *a.* Callendar, 11 *Wend.*, 90 ; Hunt *a.* Wickwire, 10 *Ib.*, 102 ; Stanton *a.* Schell, 3 *Sandf.*, 323 ; Case *a.* Shepherd, 2 *Johns. Cas.*, 27.) 3. The magistrate had jurisdiction of the subject-matter, and of the person of the plaintiff, and his error, if any was committed, was a judicial one; and for this an action does not lie against the court, the party complainant, or the officer who made the arrest. (Case of the Marshalsea, 10 *Co.*, 76, a; Stewart *a.* Hawley, 21 *Wend.*, 552 ; Gwinne *a.* Pool, 2 *Lut.*, 1562 ; Buquet *a.* Watkins, 1 *Mill*, 131 ; 1 *Smith Lead. Cas.*, 4 ed., 219, *note*; *Cor. & Hill's N.*, 1016.)

V. There is no allegation in the complaint that the facts sworn to before the magistrate do not constitute a criminal offence, or that the magistrate acted without jurisdiction; and it may well be contended that such facts do make out a misdemeanor within the statute. (*Laws of* 1857, 805, ch. 396.)

*James Troy*, for the respondent.—I. The question as to whether the damages are excessive or not, was disposed of upon the motion to set aside the verdict, and the judgment cannot be disturbed upon that ground. (Thurber *a.* Townsend, 22 *N. Y.*, 517 ; Oldfield *a.* N. Y. & H. R. R. Co., 14 *Ib.*, 310.)

II. The complaint charges that the defendants conspired together to procure the arrest of the plaintiff, and for this purpose one of the defendants, in pursuance of the conspiracy, made an affidavit upon which the warrant was issued, &c. The answer of the defendants admits that they procured the warrant; if the affidavit upon which the warrant was procured charged no offence, the magistrate acquired no jurisdiction, and the liability of the defendants is too well settled to be discussed. (Wilson *a.* Robinson, 6 *How. Pr.*, 110 ; Williams *a.* Garrett, 12 *Ib.*, 456 ; Lansing *a.* Case, 4 *N. Y. Leg. Obs.*, 221 ; Curry *a.* Pringle, 11 *Johns.*, 444 ; Vredenburgh *a.* Hendricks, 17 *Barb.*, 179 ; Tompkins *a.* Sands, 8 *Wend.*, 462 ; Gold *ads.*

Bissell, 1 *Ib.*, 210; Blythe *a.* Tompkins, 2 *Abbotts' Pr.*, 468; Comfort *a.* Fulton, 13 *Ib.*, 276.)

III. The affidavit charged no offence at common law or under any statute; it gave the justice no jurisdiction. The warrant upon its face was void, and would not even protect the officer who executed it; this was not disputed in the court below.

IV. But it was and is claimed that the justice acted judicially in determining if an offence had been committed. If this be so, he acted ministerially in issuing the warrant. (See Rogers *a.* Mulliner, 6 *Wend.*, 597.) The magistrate, however, did not act judicially.

V. To act judicially, a magistrate must first acquire jurisdiction; to effect this, a crime must be charged. In this case no offence was charged either with or without oath, in terms or in substance, nor does it appear that the justice determined any thing about it. The principle contended for by the defendants would substitute the mere opinion of a justice, as to what constitutes an offence, for the definite expression of the law; would dispense with any further declaration by the Legislature of what constitutes crimes, and acts would thereafter be harmless, or criminal, as different justices might view them.

VI. It is entirely immaterial, in this action against the persons procuring the warrant, whether the justice acted judicially or not; the liability of the former in no manner depends upon that of the latter. A justice may be (and undoubtedly is) exempt from liability from error in the exercise of judicial functions, when he has jurisdiction, no matter how grievous the consequence of his error may be; but it does not follow, that the persons who in bad faith for private ends and oppressive purposes, procure him to act, are equally inviolate. That the justice acted judicially, therefore (even if it were so), is no defence to this action. (See Rogers *a.* Mulliner, 6 *Wend.*, 597.)

VII. It was not incumbent on the plaintiff to prove malice; in fact, legal malice was implied from the wrongful acts.

By the Court.*—Emott, P. J.—The complaint in this case seems to have been framed to state a cause of action for a malicious prosecution, and the answer was probably drawn to meet

---

* Present, Emott, P. J., Brown and Lott, JJ.

such a case.  At the trial, however, by the ruling of the judge, and apparently without objection by either party, the action was considered and tried as if brought for a false imprisonment. The defendants' counsel insisted at the outset that the plaintiff should be compelled to elect whether he would proceed for false imprisonment or for malicious prosecution.  Such an election, although refused by the judge at that stage of the trial, was in effect made by him for the party at the close of the testimony, when he is stated to have decided that the action rested on the ground of false imprisonment.

The defendants' counsel did not except to this ruling, although he did except to the refusal to compel an election.  The judge afterwards charged the jury that the plaintiff had made out a cause of action for false imprisonment, and to this instruction the defendants' counsel did not except.  He also left it to the jury to determine from the evidence whether the defendants were actuated by malicious motives, adding that if the jury thought they were, they might give smart-money in the verdict against them.  The defendants' counsel excepted to the submission of the question of malice to the jury, but he evidently did so with reference to its effect upon the question of damages, and on the ground that if there were no proof of actual malice, the plaintiff, although entitled to a verdict, should have recovered for his unlawful imprisonment only his actual damages. Upon the theory, however, that the action was for a malicious prosecution, proof of actual malice was vital to the support of the action, and not merely to the question of damages.  The question of malice in such cases is always a question of fact, and must be submitted to the jury, while the existence of the other requisite essential to the action, a want of probable cause, is to be determined by the court as a question of law. In the present case the theory of an action for a malicious prosecution seems to have been abandoned by both parties, the plaintiff going for a false imprisonment, under the intimation of the court, and the defendants omitting to ask for any ruling or instruction, or to take any exceptions, which would raise the question whether a case of malicious prosecution was made out. I shall not, therefore, consider how far the evidence could sustain an action for malicious prosecution, or what disposition would be made of the various questions which might arise

Von Latham *a.* Rowan.

upon the evidence, if applied to such a case. The exception which has just been noticed, to the remark of the judge that the jury might look into the evidence for proof of malice, would require some consideration upon the question of damages, if an action for false imprisonment will lie on the present state of facts, but it will not be material to discuss that question until the liability of the defendants in such a form of action is first decided.

The only exception at the trial which can present this question is that taken upon the refusal to nonsuit the plaintiff. The same question may possibly be presented by the motion for a new trial upon the minutes, although here the defendants would be embarrassed by the fact that the direct instruction to the jury, that the action would lie, was not excepted to; so that, after all, upon that motion, as well as upon this appeal, they must rely upon their motion for a nonsuit.

The facts in the case are few and undisputed. The defendant Libby was the owner of a house and lot in the city of Brooklyn, and the defendant Rowan seems to have been his agent. On the 5th of February, 1862, Rowan made an affidavit before a police magistrate that the plaintiff had unlawfully intruded into and taken possession of the house owned by the defendant Libby without his consent, and continued to occupy it without his authority. Upon this affidavit the magistrate issued a warrant reciting the charge, and commanding the arrest of the plaintiff to answer it as a violation of the statute in such cases. The plaintiff was arrested, and pleaded to the charge. He was suffered to go upon his own promise to appear, Rowan appearing against him. The case was adjourned three times, and upon the last hearing, Rowan not appearing, the complaint was dismissed, and the plaintiff was discharged. It will be seen that there is no proof connecting the defendant Libby directly with the transaction, and all that there is in the case to make him liable to the plaintiff in an action for false imprisonment is the admission in the answer that he, as well as the defendant Rowan, procured the warrant to be issued upon which the plaintiff was arrested, and the fact appearing in the proceedings before the justice that Libby was the owner of the house into which the plaintiff was charged with intruding.

The statute under which the proceedings against the plaintiff

were taken is chapter 396 of the Laws of 1857. (1 *Laws of*
*1857*, 805, ch. 396.)    The first section of this act provides, among
other things, that any person who should thereafter intrude
upon any lot or piece of land situate within the bounds of any
incorporated city or village without the consent of the owner
thereof, should be deemed guilty of a misdemeanor.    It is not
disputed that the magistrate to whom the complaint was made
had general criminal jurisdiction to issue process for the arrest
of persons charged with any crime or misdemeanor of whatever
degree, nor that he had jurisdiction to try and to convict the
plaintiff, if he were guilty of any offence under the statute.
The difficulty in the proceedings of the defendants, which caused
the complaint to be dismissed, seems to have been that the
plaintiff was charged with intruding into a house, and not upon
a lot of land, and that Libby was not stated in the complaint or
warrant to be the owner of any lot or piece of land.    It is there-
fore contended that neither the affidavit nor the warrant state or
show the commission of any offence by the plaintiff; and for this
reason the present defendants were held liable, upon the trial of
the present suit, for false imprisonment in the plaintiff's arrest.

The only connection of the defendants with the arrest or de-
tention of the plaintiff, assuming that Libby is responsible in
the same manner as Rowan, and for all his acts, is, that they
stated their case to the magistrate, charging the plaintiff with
a misdemeanor, upon the facts which they swore to and asked
for his arrest.    The answer indeed states that they "procured
the warrant to be issued;" but as this answer was probably
drawn to meet a charge of malicious prosecution, I think its
statements and admissions should be conformed to or construed
by the evidence, and not made the ground of a liability more
extended than the proof warrants.    There is no evidence of
any undue interference to procure an arrest of the plaintiff, or
of any thing more than a statement of the case to the magis-
trate upon oath.    The defendants are not shown to have par-
ticipated personally in the arrest.    Rowan appeared at two or
three hearings before the magistrate to support it, but finally
abandoned it, or for some other reason failed to appear, and the
case was dismissed by the justice.

It must be allowed that there is some uncertainty in the de-
cisions, or perhaps in the language of judges, especially in our

courts, and in some recent cases with reference to a question of this nature. In Wilson *a.* Robinson (6 *How. Pr.*, 110), an answer to an action for false imprisonment, alleging that the defendant made a certain complaint to a magistrate averring a particular state of facts upon affidavit, upon which the magistrate issued a warrant, and the defendant was arrested, which was the imprisonment complained of, was held insufficient upon demurrer. The argument was at special term, and the judge remarks that no criminal offence was charged in the affidavit or warrant, and none was pretended to have been committed. A case may undoubtedly be supposed where a complaint should be made and a warrant issued for an act plainly lawful. Such a proceeding could hardly be in good faith. But if the case referred to would hold a party, who made a complaint charging a clearly criminal offence to a magistrate, liable for a consequent arrest made by the direction of the magistrate, because the facts stated or proved did not make out the offence charged, I should hesitate to accept the rule. The case of Comfort *a.* Fulton (13 *Abbotts' Pr.*, 276) does not seem to have been very carefully considered. The action of false imprisonment could undoubtedly be sustained in that case, upon the last ground intimated by Judge Gould, that the defendants were conspicuous actors in the imprisonment of the plaintiff.

There is another class of cases, in which officers having a peculiar and limited jurisdiction to issue process of a special nature in certain cases, having arrested individuals by such process in cases not within such authority or jurisdiction, both the officers and the parties obtaining the process have been held liable for false imprisonment. Thus in Curry *a.* Pringle (11 *Johns.*, 444), the defendant procured from a justice a warrant instead of a summons, without any oath of the facts which would authorize the justice to issue a warrant, and the plaintiff was not liable to arrest under the statute. (So in Gold *ads.* Bissell, 1 *Wend.*, 210; and in Rogers *a.* Mulliner, 6 *Ib.*, 597.)

But these were instances where the jurisdiction of the officer to issue such a process was special, and confined to cases which were brought within the statute creating it, and where no steps being taken to give or to show such jurisdiction, the proceeding was absolutely without any authority or color of justification. Vredenburgh *a.* Hendricks (17 *Barb.*, 179) was a case of a

similar nature, against a defendant who had taken out a warrant under the non-imprisonment or fraudulent debtor act, upon an affidavit which was wholly insufficient to give the officer jurisdiction or authority to act. These cases are distinguishable from the present, because here the magistrate had a general jurisdiction of the subject-matter, to wit, arrests of persons charged with crimes, and of the person accused. The affidavit of Rowan stated a wrongful act on the part of the plaintiff, which he claimed was an offence under the statute. Rowan is not shown to have done more than to state his case to the magistrate. There is nothing in the evidence to impute bad faith to him, nor do I find any evidence of actual malicious motive on his part. He may have been mistaken in supposing that the facts which he stated constituted an offence under the act referred to, or he may have omitted to state in his affidavit some fact which was necessary to constitute such an offence. But so long as he did no more than to state his case, and that without bad faith or malice, he was not, in my opinion, liable for the consequent action of the magistrate, even if it were erroneous. I do not say that he would be exempt from liability if he was shown to have acted maliciously and in bad faith; although the character and extent of his liability would present another question: but an erroneous view of the law or of his right would not of itself convict him of bad faith. If his liability to an action depended upon the maliciousness and bad faith of his complaint, that should have been submitted to a jury as the principal question; and there should be, as I have said, something more in the case to show it, than the insufficiency of his allegations to establish the commission of a criminal offence. If the defendants had actively and personally participated in the arrest of the plaintiff a different rule would apply, as it would also if the act complained of was clearly and unquestionably lawful. But I am not prepared to admit the doctrine that a party who merely states his case to a magistrate, complaining of a wrongful act as criminal, is liable to an action of false imprisonment if the magistrate upon that statement issues process, which in the event cannot be justified by the law or the facts of the case.

The contrary rule has been expressly asserted by the highest authority in the English courts. Thus in Canatt *a.* Morley

(10 *A. & E., N. S.*, 18), Morley sued Canatt and obtained judgment by default, and process against him in a Court of Requests, when his residence was in a place which was expressly exempted from the jurisdiction of the court. Canatt afterwards brought false imprisonment against Morley, the commissioners of the Court of Requests who signed the warrant, and the officer who arrested him. The Court of King's Bench held that the commissioners and the officer were liable, but Morley, the plaintiff, was not; and Lord DENMAN said, "A party who merely originates a suit by stating his case to a court of justice is not guilty of trespass, though the proceedings should be erroneous or without jurisdiction." In Barber *a.* Rollinson (1 *C. & M.*, 330), the defendant laid an information against the plaintiff, charging him with a felony. Upon his arrest he was dismissed by the magistrate, on his promise to appear in a week. As he was leaving, the defendant interposed another charge, and he was again 'put to the bar and held under a similar promise. No foundation existed for the charges, and they were dismissed. But Lord LYNDHURST, and the Court of Exchequer, held that the defendant could not be made responsible for false imprisonment. In West *a.* Smallwood (3 *M. & W.*, 418), Lord ABINGER laid down the rule with great distinctness. That was a case quite similar to the present. The plaintiff was a builder, and dispute arose between him and the defendant, for whom he was building; the plaintiff ceased work, and the defendant lodged a complaint with a magistrate, and had him arrested under a special statute known as the Master and Servant Act. On a hearing the complaint was dismissed, the case not being within the act. The plaintiff then sued in trespass for false imprisonment, but was nonsuited at the trial. The nonsuit was sustained by the Court of Exchequer, and Lord Ch. B. ABINGER said, "When a magistrate has general jurisdiction on the subject-matter, and a party goes before him and lays a complaint upon which the magistrate makes a mistake in thinking it a case within his authority, and grants a warrant which is not justifiable in point of law, the party complaining is not liable as trespasser, but the only remedy against him is by an action on the case, if he has acted maliciously." Equally strong is the doctrine of the judges of the Common Pleas in Brown *a.* Chapman (6 *Mann., Gr. & S.,*

365), which was a case where an arrest had been made which was not justified by the facts. The court say, "The acts of the defendant appear to us no more than calling on the magistrate to exercise his jurisdiction;" and add, "If an individual prefers a complaint to a magistrate, and procures a warrant to be granted upon which the accused is taken in custody, the complainant in such case is not liable in trespass for the imprisonment, and that although the magistrate had no jurisdiction." A similar principle was applied by the Supreme Court in this State, in Stewart *a.* Hawley (21 *Wend.*, 552). A justice issued a warrant, and an officer arrested the plaintiff for what was charged to be a violation of the act for the observance of Sunday. It was held, that although the facts stated did not constitute such an offence, yet the magistrate and the officer were protected, and could not be made responsible in trespass, but only for a malicious prosecution, if it were such. The rule as to the liability of the complainant, in cases where the complaint is insufficient or unfounded, must be the same whether the error or the failure to sustain the charge of a criminal offence be upon the law or the facts. If a man in good faith prefers a charge against another, upon which a magistrate causes his arrest, and the claimant fails to substantiate his charge by the evidence, he certainly is not liable to an action for false imprisonment. He is no more liable to such an action when he simply states the facts, and states them correctly, to a magistrate having jurisdiction to arrest for the offence charged, and of the person accused, and the magistrate incorrectly concludes that an offence was committed, and so orders an arrest, which is subsequently terminated by the discharge of the accused because the magistrate was in error as to the law, and the facts did not constitute a crime. Any other rule would be most hazardous to innocent parties, who could never venture to make a criminal complaint, without incurring the risk of an action for the arrest, if they were either mistaken as to the facts or ill advised upon the law.

The general principle stated in the case of the Marshalsea (10 *Co.*, 65, 76), is not at variance with the views which have now been indicated. "When a court," it is said by this venerable authority, "has jurisdiction of the cause, but proceeds *inverso ordine*, or erroneously, the party who sues or the offi-

cer who executes the process or precept of the court, no action lies against them. But when the court has not jurisdiction of the cause, the whole proceeding is *coram non judice*, and actions will lie against them without any regard of the precept or process." In the case of a complaint charging a criminal offence to a competent magistrate, such an officer has jurisdiction of the cause. His jurisdiction does not depend upon any special condition precedent to his power to issue process, but is general, as that of a civil tribunal. He is to determine whether sufficient grounds exist in law and fact to arrest any person charged by another with a criminal offence. If such a magistrate determine to make, and proceed to direct, such an arrest, a party who has merely stated the case to the magistrate is not a trespasser, although the arrest should be wholly unjustifiable in law or in fact.

In the present case, the defendants were held liable to an action for false imprisonment because the facts which they stated to the justice did not constitute a criminal offence; and the latter held that they did, and therefore arrested the defendant. We are of opinion that this would not sustain such an action, and that the very excellent and capable lawyer who presides in the city court of Brooklyn fell into an error in holding the defendants liable for false imprisonment, and refusing the nonsuit which was asked.

The judgment should be reversed, and a new trial ordered at the City Court.

---

## HANKINSON *a.* GILES.

*Supreme Court, First District; General Term, March,* 1864.

MALICIOUS PROSECUTION.—PROBABLE CAUSE.—CONSTRUCTION OF STIPULATION.—IDENTIFICATION OF PAPERS.—EVIDENCE.

In an action for malicious prosecution, a stipulation identifying certain affidavits as the originals upon which a warrant for the arrest of the plaintiff was issued, and admitting that the plaintiff was arrested upon such warrant, does not authorize the defendant to read such affidavits in evidence.